FILED
1997 SEP 30  PM 4: 01
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BILL CULVERSON, JR., } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | CASE NO. CV 96-B-3331-J |
| } | |
| GENERAL MOTORS ACCEPTANCE } | |
| CORPORATION, } | ENTERED |
| } | |
| Defendants. } | SEP 3 0 1997 |

## MEMORANDUM OPINION

Currently before the court is the plaintiff's Motion to Remand the case to state court. The case was removed to this court on the basis of federal diversity jurisdiction, and plaintiff contends that the amount in controversy requirement for federal diversity jurisdiction has not been met and that diversity jurisdiction, therefore, is not proper. Defendants counter that the amount in controversy requirement has been met in this case because both the potential common fund attorney fees and the penalties sought under Alabama's Mini-Code are aggregable and thus exceed the amount in controversy requirement under the statute. Upon consideration of the record, the submissions of the parties, and the relevant law, the court is of the opinion that the amount in controversy requirement has been met and that the motion to remand is due to be denied.

### I. BACKGROUND

Plaintiff Bill Culverson, Jr. ("Culverson") originally filed the instant case as a putative class action on November 20, 1996 in the Circuit Court of Walker County, Alabama. On December 20, 1996, defendant General Motors Acceptance Corporation ("GMAC") removed



this action to this court on the basis of this court's diversity jurisdiction. Culverson is a citizen of Alabama and GMAC is a Michigan corporation with its principal place of business in Michigan. *See* Def.'s Notice of Removal ¶ 2.

Culverson alleges fraud, breach of fiduciary duty, and violations of Alabama's Mini Code, Ala. Code § 5-19-1, on the part of GMAC and seeks compensatory damages for himself and the class he purports to represent. *See* Pl.'s Compl. Culverson's Complaint does not claim a specific amount of damages, but does contain, in pertinent part, the following "Disclaimer":

> [I]t is the specific intent of the Plaintiff to waive any compensatory damages which equal or exceed Fifty Thousand Dollars ($50,000) per class member.
> The Plaintiff further waives any claim for punitive damages, on his own behalf and on behalf of the putative class.
> The Plaintiff further waives and disclaims any federal cause of action and brings this action pursuant to the common law and statutory law of Alabama.
> . . . .
> Any attorney fees sought are sought from a common-fund composed of the limited compensatory damages set out and described herein.

Pl.'s Compl. at 6-7. According to GMAC, the putative class defined by Culverson exceeds 1000 members. Def.'s Notice of Removal ¶ 11.

## II. DISCUSSION

### A. Federal Subject Matter Jurisdiction

A case may be removed to federal district court by defendants in the action if the district court has original jurisdiction over the action. 28 U.S.C. § 1441(a). Original jurisdiction may be based on a federal question or diversity. A federal court has diversity jurisdiction over an action if the action is between citizens of different states and the amount in

2

controversy exceeds $50,000, exclusive of interest and costs. 28 U.S.C. § 1332 (1994).[1] Additionally, if removal is premised upon diversity jurisdiction, none of the defendants in the action may be citizens of the forum state for the action to be removable.

In the present case, it is not disputed that the parties are citizens of different states. Culverson's challenge to the court's jurisdiction is based on the amount in controversy. In support of his Motion to Remand, Culverson argues that (1) he has the authority to limit his own claims and the claims of the putative class; (2) violations under the Mini Code are not punitive damages and are, therefore, not aggregable; and (3) any potential attorney fees will be composed of compensatory damages and are, therefore, not aggregable. *See* Pl.'s Mem. Because the court finds the issue presented by Culverson's last argument, the aggregability of attorney fees, to be dispositive, the court need not address the other issues.

### B.   Aggregation of Relief & *Tapscott*

For purposes of determining the amount in controversy, some types of relief may be aggregated. Generally, individual compensatory damages claimed by class action plaintiffs are non-aggregable. *See Zahn v. Int'l Paper Co.*, 414 U.S. 291 (1973); *Snyder v. Harris*, 394 U.S. 332, 336 (1969). Rather, the claims of each plaintiff must meet the amount in controversy requirement for a court to have diversity jurisdiction over that plaintiff. *Zahn*, 414 U.S. at 300. The Eleventh Circuit has held, however, that punitive damages available

---

[1] Effective January 17, 1997, the amount in controversy must exceed $75,000 for a federal district court to have diversity jurisdiction. *See* Federal Courts Improvement Act of 1996, Pub. L. No. 104-317, § 205, 110 Stat. 3847, 3850 (codified at 28 U.S.C. § 1332 (1997)). Because this action was filed and removed prior to this effective date, the minimum amount in controversy required for this case remains at $50,000. 28 U.S.C. § 1332 (1994).

3

under Alabama law may be aggregated for purposes of satisfying the amount in controversy requirement for federal diversity jurisdiction. *See Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1358-59 (11th Cir. 1996).

The issue before the court is whether or not attorney fees paid from a common fund may be considered in the aggregate when determining the amount in controversy. Culverson's Complaint specifically limits each individual compensatory award to $50,000 per plaintiff and waives any claim for punitive damages. However, the complaint states that "[a]ny attorney fees sought are sought from a common-fund composed of the limited compensatory damages set out and described herein." Pl.'s Compl. at 7. GMAC alleges that "[t]he aggregate amount of attorney's fees will undoubtedly exceed $50,000 if plaintiff and the class recover at all, given the breadth and size of the class he purports to represent." Def.'s Notice of Removal ¶ 12b.[2] Culverson does not dispute this assertion. *See* Pl.'s Mem. at 16; Pl.'s Reply Mem. at 2-3. It cannot seriously be disputed that in this case, attorney fees will exceed $50,000 in the aggregate for a class in excess of 1000 members. If not aggregated, the attorney fees per class member would presumably not exceed the $50,000 threshold. The court is of the opinion that attorney fees paid from a common fund should be aggregated.

The starting point in the court's inquiry is the Supreme Court's decisions in *Harris* and *Zahn*. In both of these cases, the Court reiterated the "traditional judicial interpretation . . . that the separate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement." *Harris*, 394 U.S. at 335; *accord Zahn*, 414

---

[2]     Because the Notice contains two paragraphs labeled ¶ 12, ¶ 12a refers to the first ¶ 12 and ¶ 12b refers to the second.

U.S. at 294-95. This rule is also applicable to class actions. The Supreme Court has held that class actions under FED. R. CIV. P. 23 "involving plaintiffs with separate and distinct claims" are subject to the traditional rule "that a federal district court can assume jurisdiction over only those plaintiffs presenting claims exceeding" the statutory threshold. *Zahn*, 414 U.S. at 299; *accord Harris*, 394 U.S. at 335-36. Aggregation is permitted, however, "in cases in which two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." *Harris*, 394 U.S. at 335.

Thus, aggregation is not permitted where the plaintiffs have "separate and distinct" claims. On the other hand, aggregation is permitted where the plaintiffs in a class have a "common and undivided interest" in enforcing some right. The Eleventh Circuit grappled with this distinction in *Tapscott* where it held that punitive damages available under Alabama law should be aggregated in certain situations for the purpose of determining the amount in controversy. *Id.* at 1359. In the present action, the court finds the rationale in *Tapscott* to be wholly applicable to attorney fees and thus concludes that aggregation of such fees is appropriate for determining the amount in controversy.[3]

First, *Tapscott* held that even where a class action involves "separate individual contract claims between the parties and not a single wrong by [defendant], such as a mass tort," punitive damages may nonetheless be aggregated to determine the amount in controversy. *Id.* at 1358-59. The court's holding suggests that the proper focus of that determination is on the

---

[3] The court is aware that it is has held otherwise in the past, but those decisions pre-dated *Tapscott*. In light of *Tapscott*, the court finds that aggregation is appropriate in the instant case.

5

nature of the relief sought. *See id.* at 1358. The court carefully warned that its decision was "not to be taken to establish a bright line rule that any class claim for punitive damages may be aggregated," but, instead, aggregability should be determined on a case-by-case basis. *Id.* at 1359.

In analyzing the nature of punitive damages in Alabama, the *Tapscott* court began by noting that the purpose for punitive damages in Alabama is to "deter wrongful conduct and punish those responsible." *Id.* at 1358. The court also recognized that in Alabama, "punitive damages are awarded for the public benefit--the collective good," *id.*, and "[a]n injured party is not entitled to punitive damages as a matter of right." *Id.* The court found that any punitive damage award in *Tapscott* would be made on the basis of the defendant's conduct as a whole:

> In such an instance, where the wrong to the individual is small but the course of conduct is large, the potential punitive damages would be to punish and deter the course of conduct as a whole. When punitive damages reflect the defendant's course of conduct towards all of the putative class members, it is entirely proper that the damages be considered in the aggregate.

*Id.* at 1359. The court concluded that "the punitive damages sought in this case are a single collective right in which the putative class has a common and undivided interest." *Id.*

After analyzing the purpose of the relief sought, the *Tapscott* court examined distributional aspects of the punitive damage award. The court noted that "the failure of one plaintiff's claim will increase the share of the successful plaintiffs. [The defendant] is not concerned with the particular distribution of the punitive damages among the plaintiffs, but with the overall size of any such award." *Id.* In a footnote, the court added:

> How the remedy is to be distributed has been considered important in determining whether an interest is common and undivided. Remedies for the benefit of the group rather than vindication of individual rights are considered a

6

common interest. Courts look to whether the defendant has an interest in how the remedy is distributed among the plaintiffs, or whether the failure of one class member's claim will increase the others' shares. If a defendant is disinterested in how a potential remedy is distributed among plaintiffs or whether the failure of one plaintiff's claim increases the shares of the others, the plaintiffs are considered to have a common interest in the award.

*Id.* at 1359 n.14 (citations omitted).

### C. Applying *Tapscott*

*Tapscott* sets forth a number of factors relevant to determining whether or not a claim made by a class is "separate and distinct" or "common and undivided." First, according to *Tapscott*, it is the **nature of the relief**--not the nature of the claim--determines whether an interest is common and undivided. *See Tapscott* at 1358. Second, courts should consider the **purpose** of the relief sought; aggregation may be appropriate where the relief is not a matter of individual right for the aggrieved party, but instead advances the "collective good." *See id.* at 1358-59. "Where the wrong to the individual is small but the course of conduct is large," aggregation may be justified because an award would be based on the defendant's conduct as a whole. *Id.* Finally, courts should consider aspects of an award's **distribution**: whether the defendant is indifferent to how the remedy is distributed among the plaintiffs or "whether the failure of one plaintiff's claim increases the shares of the others." *See id.* at 1359. After applying each of these factors, the court is of the opinion that an award of attorney fees in the present action constitutes a common and undivided interest of the putative plaintiff class.

#### 1. *Nature of the Relief Sought*

This case, if certified as a class action, would involve claims arising out of many individual contracts. *Tapscott* has debunked the notion that such a case only concerns separate

7

and distinct claims. Just as mass tort claims touch upon common and undivided interests, a class action involving individual contract claims may do so as well. *Id.* at 1358. Thus, the scope of the present inquiry must focus upon the relief to be aggregated: attorney fees.

2. *Purpose of the Relief Sought*

In *Tapscott*, the court determined that punitive damages could be aggregated because such damages would advance the common good by deterring wrongful conduct or punishing those responsible for it. *Id.* at 1358-59. Although attorney fees are not awarded for the purposes of deterrence and punishment, an award of attorney fees in the present case would advance a "common good" as opposed to an individual interest. For this reason, the court finds that the purpose of the relief sought does weigh in favor of aggregation.

Attorney fees awarded from a common fund simply provide compensation for the attorneys who organize, pursue, and, in the event of a favorable judgment, administer relief in a class action. The Supreme Court has "recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund *as a whole*." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (emphasis added). The Court bases this exception to the general rule that litigants must bear their own costs upon "the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Id. See also Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 770-71 (11th Cir. 1991) (discussing the rationale underlying the "well-established common fund exception" to the American Rule that all parties bear their own costs of litigation). Thus, in economic terms, an award of attorney fees represents the cost of collective action allocated to

8

all who benefit, thus preventing a "free-rider" problem.

In the present case, an award of attorney fees from a common fund must be viewed as an award for the "public benefit--the collective good" that is shared among all class members and not the right of an individual plaintiff.[4] If successful, the attorneys in the present case will have made possible the recovery of damages for each class member. An award from the common fund ensures that each party bears a fair share of the legal bill. Once an award of fees is granted, class members can certainly determine what "contribution" they made to the fees.[5] But while an accounting of costs may be theoretically possible, the benefit is in fact common and undivided. The fees that each class member contributes cannot be considered individually because class members cannot forego their individual contribution. If class members had such a choice, no rational class member would contribute and, consequently, no attorney fees would be paid. Without the prospect of being compensated for their services, no rational attorney would undertake such a case. By serving as the incentive that makes the lawsuit possible, attorney fees--taken as a whole--comprise a shared interest among class members.

---

[4]  Attorney fees may also serve the "collective good" in a broader sense. The stated purpose of class actions is to "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated without sacrificing procedural fairness . . . ." Fed. R. Civ. P. 23 advisory committee's notes to 1966 amendment. Properly litigated class actions enjoy economies of scale by sparing the public the costs of redundant litigation and the possibility of inconsistent judgments while ensuring access to justice for individuals with valid, but modest claims. Therefore, the public as a whole benefits from attorney fees that reward the work of attorneys who bring effective class actions.

[5]  For example, with a class of 1000 members where each member wins a $100 judgment and attorney fees total $50,100, each class member would receive a net share of $49.90, having each "contributed" $50.10 to attorney fees.

Moreover, this lawsuit targets GMAC's course of conduct as a whole. By defining the putative class to include all persons who have been victimized in the same manner as Culverson alleges, he is targeting his action against GMAC's entire course of conduct, not just its conduct with respect to Culverson. GMAC admits that the putative class includes at least 1000 members. While the relative wrong to the individual may be small, the alleged course of conduct by GMAC is large. Indeed, the very reason for proceeding as a class action is to remedy this "large conduct." Again, without the incentive of attorney fees, no rational attorney would undertake such a class action. If the suit proves successful, then the attorneys' work would certainly inure to the collective benefit of the entire plaintiff class. Because an award of attorney fees would serve the purpose of advancing this collective good, the court concludes that the "purpose" factor in the *Tapscott* analysis weighs in favor of aggregating potential attorney fees in the present case.

3.  *Distribution of the Relief Sought*

As with the punitive damages in *Tapscott*, the distributional characteristics of attorney fees serve to demonstrate how all class members in the present case have a common and undivided interest in the award of such fees.

GMAC is entirely disinterested in the distribution of the costs of attorney fees. In *Tapscott*, the defendant was "not concerned with the particular distribution of the punitive damages among the plaintiffs, but with *the overall size of any such award*." *Id.* at 1359. (emphasis added). Similarly, GMAC's only concern would be its total liability in compensatory damages; once it funds the common fund, GMAC would be indifferent as to how class members apportion attorney fees from that fund. In fact, GMAC would be

indifferent to whether fees are awarded at all. From the defendant's point of view, an award of attorney fees is irrelevant because the fees and the compensatory damages appear to be an indivisible lump sum.

In *Tapscott,* the court also weighed the significance of whether the failure of one plaintiff's claim would result in an increased share of punitive damages for successful plaintiffs. *Id.* The instant case presents a different scenario: the success of each class member's claim actually results in an *increased* share for all other class members. If GMAC is found liable, a larger plaintiff class results in a larger common fund from which to apportion attorney fees. A larger class will usually result in higher costs of administration and representation. However, the marginal increase in compensatory damages that the common fund receives for each additional class member presumably outweighs the marginal costs incurred. With a larger plaintiff class, the cost of attorney fees would be spread out among more class members and diluted by the increase in the common fund.[6] Consequently, each class member actually has an interwoven interest in each other's success. For this reason and those stated above, attorney fees in the present case may be properly aggregated because such fees constitute a common and undivided interest among members of the putative class.

---

[6] To illustrate, if 1000 class members each won damages of $100 and attorney fees totaled $50,100, the fees would have to be deducted from the $100,000 common fund, leaving $49,900 for distribution to class members. Each class member would "contribute" $50.10 in legal costs and net $49.90.

Assume, however, that a 10,000-member class won the same individual damages, creating a common fund of $1 million. It is unlikely that attorney fees would increase proportionally to $501,000. If we assume, instead, that it is *five times* as costly to represent and administer a 10,000-member class versus a 1,000-member class, then attorney fees would total $250,500. With 10,000 class members to share the fees, each member would only "contribute" $25.05 towards attorney fees and net $74.95.

Therefore, the court concludes that the amount in controversy exceeds the statutory threshold for diversity jurisdiction.

## CONCLUSION

Based on the foregoing, the court is of the opinion that diversity jurisdiction exists in the present action. As the parties are diverse and the amount in controversy has been satisfied, the court has proper subject matter jurisdiction over the present action. Therefore, plaintiff's Motion to Remand is due to be denied. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this 30th of September, 1997.

SHARON LOVELACE BLACKBURN
United States District Judge